IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-01677-RBJ

MATTHEW MCCAMERON,

    Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

    Defendant.

**ORDER**

    This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying plaintiff Matthew McCameron's application for Supplemental Security Income ("SSI"). Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court REVERSES and REMANDS the Commissioner's denial of benefits.

**I. STANDARD OF REVIEW**

    A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). To be disabling, a claimant's conditions must be so limiting as to preclude any substantial gainful work for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995). This appeal is based upon the administrative record ("AR") and the parties' briefs. In reviewing a final SSA decision, the District Court examines the record and determines whether it contains

substantial evidence to support the decision and whether SSA applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). The District Court's determination of whether the ruling by the Administrative Law Judge ("ALJ") is supported by substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). A decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Reversal may be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## II. BACKGROUND

Plaintiff initially requested SSI benefits under Title VI of the Social Security Act on September 11, 2017. AR 10. His disability onset date is listed as September 11, 2017. *Id.* Mr. McCameron's initial claim was denied on April 9, 2018, and he timely requested a hearing with an Administrative Law Judge ("ALJ"). AR 102. The ALJ conducted a hearing on July 24, 2019 and rendered his decision on August 6, 2019. AR 7, 31. The Appeals Council upheld the ALJ decision on April 15, 2020. The ALJ's determination is thus considered a final administrative determination.

Mr. McCameron previously worked as a ranger in the United States Army, a ski resort manager, a whitewater rafting guide, and a customer service representative. AR 95. Mr. McCameron initially injured his back while in the military. AR 388. That injury was later exacerbated by a rafting accident in which Mr. McCameron was thrown from a water bike into

an approaching boat traveling at thirty miles per hour. *Id.*; AR 47–48. As a result of these accidents Mr. McCameron was diagnosed with degenerative disc disease and degenerative joint disease of the left knee. AR 267. He lost his most recent job as a customer service representative because he called out of work seven times in the first three weeks due to pain and discomfort. AR 56.

Mr. McCameron's extensive treatment history is captured in the administrative record. He began physical therapy in 2016. At one of his first consultations the physical therapist noted that Mr. McCameron "presents today with a very slow and guarded gait. Transfers from supine to sit and sit to stand are very guarded. The patient appears to shift weight several times per minute when sitting. He is also constantly rotating his lumbar spine in order to stretch." AR 388.

In June 2016 he had a spinal cord stimulator implanted. *Id.* That procedure provided temporary relief, and he was initially able to reduce the number of narcotics he was taking daily. *Id.* However, that relief was brief, and his pain again grew more severe as time passed. *Id.*; *see also* AR 441. Despite his surgery he continued to experience moderate hypertrophic degenerative changes in his back, with his disc space narrowing. AR 456, 473.

In 2016 Mr. McCameron was admitted to the emergency room for severe neck pain after he tripped over a blanket and fell. AR 395. The treating provider observed that Mr. McCameron experienced significant pain in his back and "a decreased range of motion, tenderness, and pain." AR 397. In December 2017 he continued expressing his pain to his doctors, rating it an eight out of ten. AR 408. The doctor noted at this visit that he had joint pain, swelling, and muscle weakness. *Id.* In an effort to curb Mr. McCameron's pain, doctors prescribed numerous

narcotics, including hydrocodone and morphine. He has taken these regularly for several years. AR 412; *see also* AR 54. He takes nearly 130 mg of narcotics daily. AR 54. He has attempted decreasing this daily intake, but such decreases cause his back pain to worsen. AR 413.

In March 2018 Dr. Nnunukwe evaluated Mr. McCameron. Dr. Nnunukwe X-rayed Mr. McCameron's lumbar spine and found that there were "[m]oderate hypertrophic degenerative changes with disk space narrowing . . . ." AR 473. Additionally, an MRI showed "[m]ulti-level degenerative disk disease . . . where there is a central, left paracentral, and left lateral disk extrusion which effaces the left lateral recess and compresses the left S1 nerve root within the lateral recess. There has been mild aggression of disease when compared to previous study. . . ." *Id.* He noted that McCameron's pain was "worsened with standing, prolonged sitting, lifting, [and] bending," and that he "cannot stand up without the use of arms." AR 475. Mr. McCameron had a positive Romberg sign, an indication of poor balance, as well as "an antalgic gait." AR 476. The doctor further noted that he had "sensory gait ataxia and paraplegia of the bilateral lower extremities," and that "claimant cannot perform toe or heel walk on the left." Finally, he found that Mr. McCameron's "[t]andem gait [was] wobbly," although he was able to perform seven steps. *Id*.

Dr. Nnunukwe also noted how Mr. McCameron's impairments and pain affected his activities of daily living:

> [H]e has difficulty with showering during very painful days and is unable to stand up for long periods over the stove to prepare meals. He receives most of his help from his wife and mother-in-law. Otherwise he is able perform activities of daily living. He spends most of his day trying to get comfortable, does not have any hobbies at the moment because of his physical limitations due to pain.

AR 474. Dr. Nnunukwe concluded that Mr. McCameron could stand and/or walk four hours in an eight-hour workday so long as he was permitted to take a break every hour. He further opined that Mr. McCameron could sit for six hours, also with frequent breaks once every hour, and that an "assistive device is necessary for all distances and all terrain." AR 478.

Dr. McElhinney, a state agency consultant, opined that Dr. Nnunukwe's opinion was overly restrictive and not consistent with the medical record as a whole. He concluded that despite his pain, Mr. McCameron is "able to sit, stand, walk, and move [his] arms without significant loss of control or muscle weakness." AR 96. He further stated that Mr. McCameron could lift and or carry twenty pounds occasionally, ten pounds frequently, and could stand for four hours with normal breaks during an eight-hour workday. AR 92. He found that Mr. McCameron could sit for about six hours during an eight-hour workday, and that he could climb ramps or stairs occasionally, could never climb ladders or scaffolds, and could balance, stoop, kneel, crouch, and crawl frequently. AR 93.

The ALJ considered both doctors' opinions. The ALJ explicitly rejected Dr. Nnunukwe's conclusion that plaintiff needed at least one break per hour. He stated

> The limitations were consistent, overall, with the claimant's records and examination. For instance, the claimant's allegations of needing a cane, back pain, and knee pain, which would limit the claimant to sedentary work . . . . He also stated his pain was stable with medication, including the ability for some exertion. However, the postural limitations appeared overly restrictive in light of the claimant's ability to perform activities of daily living, by his own reporting, including some childcare or cleaning, that is somewhat limited by pain.

AR 16. As to Dr. McElhinney's opinion, the ALJ found that Mr. McCameron could stand for only two hours, as opposed to four hours, during an eight-hour workday due to his knee and back issues. *Id.*

5

In rejecting Dr. Nnunukwe's opinion that Mr. McCameron needed frequent breaks, the ALJ seemed to largely consider the subjective medical evidence, i.e., Mr. McCameron's own statements about how his impairments affected his daily life. Prior to the hearing, Mr. McCameron completed a function report. There, he largely stated that while he tries to perform light work around the house such as cleaning, taking care of his children and dogs, and cooking for himself, it is rare that he is able to do such things, and that his mother-in-law and wife help him most days. *See* AR 218–225.

The ALJ followed the five-step process in deciding that Mr. McCameron was not disabled. At step one, he found that Mr. McCameron had not engaged in substantial gainful activity since September 11, 2017. AR 12. At step two he found that Mr. McCameron had the severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee, and gastroesophageal reflux disease. *Id.* At step three, he found that none of Mr. McCameron's impairments met or medically equaled one of the listed impairments in the regulations. As such, the ALJ proceeded to step four where he found that Mr. McCameron

> Had a residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except the claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. The claimant can sit for 6 hours in an 8- hour workday and stand and/or walk for 2 hours in an 8-hour workday. The claimant requires the use of a handheld assistive device, like a cane, for ambulation at distance. He can occasionally climb stairs and ramps, but never climb ladders, ropes, or scaffolds. The claimant can never balance as part of his job requirements. He can occasionally stoop, crouch, kneel, and crawl. The claimant can have occasional exposure to extreme cold. He cannot have exposure to excessive vibration. The claimant can never work around unprotected heights and dangerous or moving machinery.

AR 15. In reaching this RFC finding the ALJ noted that Mr. McCameron's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity persistence and limiting effects of

these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 16. He reasoned that the "claimant appears able to perform many activities of daily living, despite some limitations from his alleged pain, like caring for his children and helping around the house." *Id*.

Finally, at step five, the ALJ relied heavily on the vocational expert's testimony from Mr. McCameron's hearing. Throughout the hearing the ALJ asked the vocational expert a number of hypothetical questions to determine whether individuals with similar conditions to Mr. McCameron could work with certain limitations. The vocational expert concluded that an individual with Mr. McCameron's restrictions could find sedentary work so long as he was not required to take breaks once every hour, and instead only took normal breaks. AR 61. As mentioned above, the ALJ ultimately found that Mr. McCameron's RFC did not require more frequent breaks than customarily permitted. Thus, the ALJ, relying on the vocational expert's testimony, concluded that Mr. McCameron was not disabled. Mr. McCameron filed suit in this Court and now requests that I reverse the ALJ's determination.

### III. ANALYSIS

Plaintiff argues that the ALJ erred in his SSI determination because his "findings regarding the consistency of Mr. McCameron's statements are not compliant with Social Security Ruling 16-3p and controlling case law, resulting in harmful error." ECF No. 15 at 5. Defendant contends that the ALJ's decision is supported by substantial evidence. ECF No. 23. At 17.

Determining whether pain affects a person's ability to work involves a two-step process. At step one, the ALJ must determine whether a medically determinable impairment is present

7

that could cause the pain. *Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017) ("An individual's symptoms, such as pain . . . will not be found to affect the ability to perform work-related activities . . . unless medical signs or laboratory findings show a medically determinable impairment is present."). If a medically determinable impairment is found, at step two the ALJ must "evaluate the intensity and persistence of [an individual's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." *Id*. at *3.

In evaluating the intensity and persistence of a claimant's symptoms, an ALJ must consider all available evidence from a claimant's medical sources and nonmedical sources. Notably, ALJs must "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Soc. Sec. Ruling 16-3p*. at *5. The objective medical record is just one of several factors that ALJs must consider. *Id.*; *see also* 20 C.F.R. § 404.1529. Other factors include the claimant's daily activities, the "location, duration, frequency, and intensity of [the claimant's] pain or other symptoms," precipitating and aggravating factors, the effectiveness of any prescribed medication, and any treatment the claimant has received. 20 C.F.R. § 404.1529(c)(3). In addition, the ALJ must specifically articulate why and on what basis he concludes that plaintiff's subjective statements about pain are unsupported by the record. *Id.*

The Tenth Circuit has emphasized that a reviewing court should give particular deference to an ALJ's evaluation of a claimant's subjective reports of limitations. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). At the same time, an "ALJ 'must articulate specific reasons for

8

questioning the claimant's credibility' where subjective pain testimony is critical." *Id.* (quoting *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).  The ALJ is not required to explicitly state "I find this statement not credible" for each factual assertion but can instead list many factual assertions, "often following them by a qualifying statement to indicate where [the ALJ] believed [the claimant's] testimony was contradicted or limited by other evidence in the record." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1169 (10th Cir. 2012).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).

Here, it is undisputed that plaintiff has a medically determinable impairment: he suffers from both degenerative disc disease of the lumbar spine and degenerative joint disease of the left knee.  AR 12.  The issue therefore is whether the intensity and persistence of Mr. McCameron's pain limits his ability to perform work-related activities.  The ALJ concluded that it did not, and that Mr. McCameron could perform sedentary work.  In so doing, the ALJ rejected Dr. Nnunukwe's opinion, who opined that the intensity of Mr. McCameron's pain would require that he take breaks once every hour during a normal workday.  Plaintiff argues that the ALJ's rejection of Dr. Nnunukwe's recommendation was not sufficiently specific.  I agree.

The ALJ found Dr. Nnunukwe's opinion to be overly restrictive "in light of the claimant's ability to perform activities of daily living, by his own reporting, including some childcare or cleaning, that is somewhat limited by pain."  AR 16.  He ultimately found that Mr. McCameron's statements regarding the intensity and persistence of his pain were not supported by the objective medial evidence.

In his decision the ALJ wrote, "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, *they are inconsistent*. The claimant appears able to perform many activities of daily living, despite some limitations from his alleged pain, like caring for his children and helping around the house." *Id*. (emphasis added). The ALJ was right to consider whether Mr. McCameron could perform daily activities. However, his conclusion about his ability to do those activities is not linked to or supported by substantial evidence. He instead links his finding to isolated sentences in the record that are removed from context. Thus, the ALJ's determination here is "a conclusion in the guise of findings." *Huston*, 838 F.2d at 1133.

For instance, the ALJ cites to a March 20, 2018 examination which states, "[o]therwise he is able to perform activities of daily living." AR 474. The ALJ, however, makes no mention of the qualifying word otherwise. When taken in context, the paragraph from which the ALJ pulls reads quite differently. It states,

> The claimant states that he has difficulty with showering during very painful days and is unable to stand up for long periods over the stove to prepare meals. He receives most of his help from his wife and his mother-in-law. Otherwise he is able to perform activities of daily living. He spends most of his day trying to get comfortable, does not have hobbies at the moment because of his physical limitations due to pain.

AR 474. Nothing about this statement or paragraph contradicts Dr. Nnunukwe's opinion that plaintiff needs frequent breaks once every hour. In fact, it tends to show that plaintiff struggles to perform daily activities without help from others, and that he is able to perform some daily activities so long as they do not require him to be in one position for too long. Thus, when read in its full context, the evidence to which the ALJ cites provides some support for Dr. Nnunukwe's opinion that Mr. McCameron would need to take frequent breaks once every hour during an eight-hour day.

The second piece of evidence to which the ALJ cites also supports Dr. Nnunukwe's opinion when it is read in context. The ALJ cites to the functional report Mr. McCameron completed for the conclusion that Mr. McCameron can perform household activities. Here too the ALJ cites evidence that supports a finding of non-disability and out of context. Though Mr. McCameron says in the report that he tries to perform household activities when he can, he also says his ability to do such activities is rare, and that he primarily relies on his mother-in-law to perform tasks for him. For instance, the functional report reads,

> It is very hard to sit or stand for more than 15-20 minutes. Bending at the waist sends sharp pain throughout my back and legs. It is very difficult to bend over and pick up my 6-month-old daughter up out of her crib. It is also difficult to stand bent over and change diapers or to cook, clean, or give the kids a bath. Pretty much every part of my day is affected by pain.

AR 218.

In that same document, Mr. McCameron reports the following, "I try to do what I can throughout the day, but my mother-in-law is at my house while my wife is at work to do most of the daily things." *Id.* Regarding whether he takes care of his children, he says that he tries to do what he can "but [his] mother-in-law does pretty much everything." Regarding whether he takes care of animals, he says "If I feel like I can do it, I try. But my mother-in-law does pretty much all those things." AR 218. He further states that he is slow at getting dressed and bathing, and that it is hard to sit when he needs to use the restroom. AR 219. If he must cook for himself, he only cooks frozen dinners to avoid having to stand for too long. *Id.* This document, when read in its entirety, does not support the ALJ's finding that Mr. McCameron does not require a break every hour. Instead, it again demonstrates that he struggles with pain daily, and that he cannot

11

remain in one position too long, further supporting Dr. Nnunukwe's opinion that frequent breaks would be necessary.

The ALJ next considers the treatment Mr. McCameron received. He writes that "[t]he claimant also reported improvement with the use of his spinal stimulator, which allowed him to cut down on his medication. His pain also appeared stable throughout much of the record, with little treatment in 2018." AR 16. The ALJ again removes these two statements from their context. Though Mr. McCameron did have a spinal stimulator implant that initially provided relief, the efficacy of that implant decreased overtime. AR 675. In fact, because of the decreasing effectiveness, Mr. McCameron's doctor again recommended a more invasive spinal surgery and planned on presenting Mr. McCameron's case to other physicians at a medical conference to elicit feedback on effective treatment for Mr. McCameron. AR 50. The ALJ does not reference these facts in his decision, again potentially obscuring the true nature of Mr. McCameron's condition overall. That Mr. McCameron may have at one time experienced temporary relief does not necessarily mean the pain he complains of presently permits him to perform work-related activities. Because the ALJ selected cherry-picked facts from the record that supported a finding of non-disability, but did not cite facts that supported a finding of disability, the Court concludes that the ALJ did not "specifically articulate why and on what basis . . . plaintiff's subjective statements about pain are unsupported by the record" in violation of 20 C.F.R. § 404.1529(c)(3).

At Mr. McCameron's hearing the vocational expert testified that a hypothetical individual with Dr. Nnunukwe's restrictions—taking one break every hour—would not be able to find competitive employment. AR 61–62. Accordingly, if the ALJ followed Dr. Nnunukwe's

opinion, then he likely would have found Mr. McCameron to be disabled. The ALJ must provide specific reasons that are supported by the record for why (1) he rejected Dr. Nnunukwe's limitations, and (2) he found Mr. McCameron's subjective statements about his pain inconsistent with the overall record. So far, the evidence to which the ALJ cites provides support for a finding of disability, rather than one of non-disability. As such, the ALJ's decision is REVERSED and REMANDED.

## **ORDER**

The Court REVERSES the Commissioner's decision denying Mr. McCameron's application for SSI and REMANDS for reevaluation of the evidence consistent with this order.

DATED this 27th day of July, 2021.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge